IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARK GIANASSI,

Case No.: 6:14-cv-01078-GAP-TBS

Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation

Defendant /

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF-GIANASSI'S COUNTS FOR BAD FAITH AND FOR DECLARATORY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to M.D. Fla. Local Rule 3.01 and 4.02, Plaintiff, MARK GIANASSI, files this Response Opposing Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY's ("State Farm") Motion to Dismiss Counts For Bad Faith (Count II) and For Declaratory Judgment (Count III) of his complaint and states as follows:

On July 20, 2013, Plaintiff sustained injuries in an automobile collision in Orange County, Florida caused by an uninsured/underinsured motorist. At the time of the collision, Plaintiff had in effect an uninsured / underinsured motorist ("UM/UIM") policy with STATE FARM with coverage limits of $100,000 per person / $300,000 per accident. Plaintiff submitted a UM/UIM claim to Defendant. After Defendant failed to timely pay the claim. Plaintiff filed a Civil Remedy Notice of Insurer Violation (CRN) pursuant to Florida Statutes Section 624.155(c)(a). The CRN requested a tender of the policy limits and alleged that STATE FARM

had committed bad faith and unfair trade practices by failing to pay the claim. Despite the filing and service of the CRN, Defendant failed to pay the claim or make reasonable offers to settle. More than sixty (60) days passed without Defendant curing the complaints set forth in the CRN. Plaintiff filed his Complaint in the Circuit Court in and for Orange County, Florida on May 30, 2014. The Complaint included the following three counts: (I) a claim for UIM benefits; (II) a claim of statutory bad faith and unfair trade practices; and (III) a claim seeking declaratory relief. As discussed below, Plaintiff seeks to abate, Count II, Bad Faith, pursuant to *Allstate v. Ruiz*, 899 So.2d 1121 (Fla. 2005) ("we caution that where the coverage and bad faith actions are initiated simultaneously, the courts should employ existing tools, such as the abatement of actions...")

State Farm removed the action from the Circuit Court of Ninth Judicial Circuit in and for Orange County, Florida pursuant to 28 U.S.C. §1332. Plaintiff hereby respectfully requests this Court to enter an Order (1) abating Count II pursuant to current Florida case law and (2) denying Defendant's Motion to Dismiss allowing the declaratory relief in Count III to proceed concurrently with the UM/UIM claim in Count I. As discussed below, this will prevent any prejudice to the parties and promote judicial economy.

**MEMORANDUM OF LAW**

Fla. Stat. §627.727 (10) sets the measures of damages for violations of Fla. Stat. § 624.155 involving UM/UIM claims as being all the damages caused by the underlying crash. Thus, there are many common questions of law and fact between Plaintiff's claim for UIM benefits, the bad faith claim, and the declaratory claim. These common facts apply to all three causes of action plead in the Complaint, include:

a. Determination of fault for the crash;

b. Plaintiff's comparative negligence if any;

c. Whether there was negligence of a third party, and if so to what degree that negligence caused damages;

d. Damages;

e. Whether the gross or net medical bill amount is admissible into evidence at trial;

f. Set-offs if any; and

g. Many other evidentiary and procedural issues that arise in every UM/UIM case.

If STATE FARM's motion to dismiss is granted and the common issues identified above are required to be tried in a separation action, all the work of the parties, the Court, the clerk's office, and courtroom personnel may be duplicated.

**<u>COUNT II, BAD FAITH, SHOULD BE ABATED NOT DISMISSED</u>**

**1. A claim for first party bad faith may be brought in the same action as the claim for UM benefits.**

STATE FARM seeks to dismiss (rather than abate) Count II, which states a cause of action for bad faith pursuant to Florida Statutes §624.155. Defendant's Memorandum of Law correctly asserts that a statutory bad faith cause of action is premature prior to a determination of liability and extent of damages. *Vest v. Travelers Ins. Co.*, 753 So.2d 1270 (Fla. 2000) and *Blanchard v. State farm Mut. Auto Ins. Co.*, 575 So.2d 1289 (Fla. 1991) . However, Florida courts have routinely recognized that a prior final judgment is not a condition precedent to asserting or pleading a claim for bad faith. *Imhof v. Nationwide Mut. Ins. Co.*, 643 So.2d 617, 617-618 (Fla. 1994), disapproved in part on other grounds, *Laforet*, 658 So.2d at 62 (noting that neither the Florida Supreme Court in *Blanchard* or *Imhof* nor the bad faith statute "imposes [a]

requirement of a prior judgment as a condition precedent to a bad faith claim"); see also *Allstate Inc. Co. v. Cohessy*, 32 F. Supp. 2d 1328, 1332 (M.D. Fla. 1998) (noting that damages need not be determined by litigation prior to assertion of a bad faith claim.) Attached hereto as **Exhibit "1"** is an Order dated June 16, 2014, from the Honorable Mary S. Scriven, United States District Court Middle District of Florida Tampa Division, denying STATE FARM's motion to dismiss a bad faith count and a declaratory relief count, citing Florida cases favoring abatement and finding "judicial economy weighs in favor of abatement." *Leuty v. State Farm Mutual Automobile Insurance Company*, Case No. 8:13-cv-3038-T-35MAP

Subsequent to *Vest* and *Blanchard,* Florida courts, including the Florida Supreme Court, have allowed the simultaneous filing of a UM/UIM breach of contract action and a statutory bad faith action, abating the statutory bad faith action. In *State Farm Mut. Auto. Ins. Co. v. Trancvhese*, 49 So2d 89 (Fla. 4th DCA 2010), where STATE FARM's Motion for Abatement had been denied by the trial court and it sought a writ of certiorari, the Fourth District Court unambiguously stated in the context of UM/UIM actions:

> Where causes of action for both the underlying damages and bad faith are brought in the same action, the appropriate step is to abate the bad faith action until coverage and damages have been determined. See *Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121 (Fla. 2005)

See also *North Pointe Ins. Co. v. Tomas,* 99 So.2d 728, 728-29 (Fla. 3d DCA 2008) (remanding for "abatement of the bad faith claim pending disposition of the breach of contract claim"); *Illinois Nat. Ins. Co. v. Bolen*, 53 So.2d 388 (Fla. 5th DCA 2011) ("[t]he same concerns that impel abatement of the bad faith claim in the first instances remain until the insurer's claims of error resulting in an excess verdict are resolved against them on appeal.")

Florida trial courts have found, with steadily increasing frequency, that the joinder of unripe bad faith counts to the underlying action is appropriate under Florida law. *Leuty v. State Farm Mut. Auto Ins. Co.,* Case 8:13-cv-03038-MSS-MAP Document 16 (M.D. FL Order dated June 16, 2014)(See **Exhibit "1"** attached hereto); *Mark v. State Farm Mut. Auto. Ins. Co.,* No. 2011CA9856 (Fla. 4th Cir. Ct. Apr. 28, 2014) (granting a motion to amend to add bad faith and declaratory judgment counts); N*orgaisse v. Allstate Fire & Cas. Ins. Co.,* No. CACE 11-000946 (14) (Fla. 17th Cir. Ct. Apr. 7, 2014) (same); *Hardy v. 21st Century Centennial Ins. Co.,* No. 2013-13278-CIDL (Fla. 7th Cir. Ct. Mar. 27, 2014) (denying motion to dismiss bad faith and declaratory judgment counts); *Barber v. GEICO Cas. Co.,* No. 05-2009-CA-014599 (Fla. 18th Cir. Ct. Feb. 18, 2014) (denying defendant's motion to dismiss bad faith and declaratory judgment counts); *Pietrowski v. Mercado-Roussel,* No. 2013-CA-9453 (Fla. 9th Cir. Ct. Feb. 10, 2014) (denying defendant's motion to dismiss unripe bad faith count); *Tobias v. Progressive Select Ins. Co.,* No. 56 2012 CA 000968 (Fla. 19th Cir. Ct. Jan. 24, 2014) (granting plaintiff's motion to amend to add bad faith and declaratory judgment counts); *Meza v. State Farm Mut. Auto. Ins. Co.,* 21 Fla. L. Weekly Supp. 419, 420 (Fla. 13th Cir. Ct. Dec. 3, 2013) (granting a motion to amend to add bad faith and declaratory judgment counts and staying the unripe claims handling issues); *Worrell v. Reed,* No. 2013-CA-504 (Fla. 5th Cir. Ct. Nov. 15, 2013) (denying defendant's motion to dismiss unripe bad faith count*);* *Beare v. Safeco Ins. Co. of Ill.,* No. 31-2011-CA-001594 (Fla. 19th Cir. Ct. July 25, 2013). Attached hereto as composite **Exhibit "2"** are copies of the above referenced orders.

2. **Bringing the claim for bad faith in the same action as the contract claim will promote judicial economy and efficiency by insuring against the potential need to conduct two sets of discovery and litigation on liability and damages.**

In practice, courts have used *Government Employees Insurance Co. v. Bottini*, 93 So. 3d 476 (Fla. 2d DCA 2012*)* as a basis for finding that collateral estoppel did not apply to the determination of excess damages in a first-party bad faith case because the final judgment on damages in the underlying UM case is limited to the policy limit. *See e.g. King* v . *Gov't Empls. Ins. Co.,* 2012 WL 4052271, Case No. 8:1O-cv-977-T-30AEP,at 6 (M.D. Fla. Sept. 13,2012) In *King*, GEICO sought partial summary judgment on the underlying verdict as an element of damages. Id. The jury in the underlying UM case had returned a verdict in excess of the policy limit but the judgment entered by the trial court was limited to the $25,000 available under the UM policy. Id. at 1. The court applied the ideas in *Bottini* and found that collateral estoppel could not apply to bind the court in the subsequent action "because the verdict was not a final judgment accorded conclusive effect." Id. at 6. The *King* court did note that the underlying judgment is likely what Section 627.727 references where it allows for recovery of the total damages, "including the amount in excess of policy limits." Id. However, the likely intention of the legislature notwithstanding, the court held that the plaintiff in a first-party bad faith action "must prove her damages in the bad faith action *and are not entitled to rely on the underlying verdict* as conclusive proof of those damages." Id. (emphasis added).

It is uncertain whether the case law requires a re-litigation of total damages in a subsequent bad faith action where a claim for first-party bad faith is brought separately,[1] but there is no

[1] One federal district court has refused to allow the insurer to relitigate damages in the subsequent UM bad faith case that was removed to federal court where the jury verdict in the underlying liability and damages action was $1.8 million dollars but reduced to a final judgment equal to the $30,000.00 UM policy limits. *Batchelor v. Geico Cas. Co.*, Case No. 6:11-cv-1071-Orl-37GJK (M.D. Fla., June 9, 2014)(Dalton Jr., R.)("Plaintiff's damages were fixed by the verdict in the underlying action; the information that Defendant's interrogatories sought about those damages is thus irrelevant to this action"). *But see Harris v. Geico Gen. Ins. Co.,* No. 11-80552-CIV, 2013 WL 4463836, at *6 (S.D. Fla. Aug. 7, 2013) (Ryskamp, J.) *on appeal Harris v. GEICO Gen. Ins. Co.,* No. 13-14171-FF (11th Cir. Mar. 3, 2014); *King v. Gov't Emps. Ins. Co.,* No. 8:10-cv-977-T-30AEP, 2012 WL 4052271,

applicable case law that precludes Plaintiff from seeking to join the first-party bad faith claim to the complaint in the present action. Until recently, plaintiff has had the option to bring a claim for first party bad faith either in the same cause of action as an underlying claim for UM benefits or as a separate cause of action. *See e.g. Ruiz,* 899 So. 2d at 1130. If a determination of liability and damages in the underlying action will not have collateral estoppel effect in a subsequent action, Plaintiff would be required to join the claims or otherwise litigate the same issues twice. Re-litigation would be an inefficient and unnecessary use of limited time and resources.

In practice, insurance companies in UM/UIM actions oppose the joining of the bad faith case to the underlying action while simultaneously arguing that collateral estoppel principles require that damages be re-litigated in the subsequent bad faith action. This argument has already been made by insurance companies in first-party bad faith cases. *See Harris v. Geico Gen. Ins. Co.,* No. 11-80552-CIV, 2013 WL 4463836, at 6 (S.D. Fla. Aug. 7, 2013) (Ryskamp, J.) *on appeal Harris v. GEICO Gen. Ins. Co.,* No. 13-14171-FF (11th Cir. Mar. 3, 2014). In *Harris*, the defendant, GEICO, argued that "collateral estoppel does not bind the GEICO [sic] to the underlying verdict amount because that verdict was not a final judgment accorded conclusive effect." Id. Although it is unclear whether collateral estoppel in fact requires plaintiffs who bring two separate actions to conduct two sets of discovery and two separate trials on the issue of total damages, the case law is clear that a first-party bad faith claim *may be brought* in the same action as the underlying UM benefits claim, thereby eliminating the potential for judicial inefficiency.

Furthermore, unless the first party bad faith case is brought in the same complaint as the UM/UIM cause of action, the insurer has the option to tender its policy limit on the eve of trial and

---

at *5 (M.D. Fla. Sept. 13, 2012) (Moody, J).

move for a confession of judgment, thereby rendering all of the discovery and trial preparation conducted on liability and damages in the UM case completely moot. *See Safeco Ins. Co. of Ill.* v. *Fridman,* 38 Fla. L. Weekly Dl159c (Fla. 5th DCA May 24, 2013). In *Fridman,* the insurer did exactly this, and the Fifth District Court of Appeal held that the trial judge's denial of Safeco' s motion for entry of a confession of judgment was in error. *Id.* The court reasoned that the tendering of the policy limit rendered the claim for UM benefits moot, and therefore the court erred by allowing the case to proceed to trial. *Id.* The plaintiff had not brought the first-party bad faith claim with the underlying verdict, and as the dissenting opinion points out, this would have been the only way to avoid having years of litigation go to waste upon the insurer's unilateral decision to tender its limits immediately preceding trial. *Id.* (Sawaya, 1. dissenting).

Florida trial courts have recognized the practical reality facing litigants. For example, in *Meza v. State Farm Mutual Automobile Insurance Co.,* the court granted the plaintiff's motion to amend his complaint to add both a count for bad faith and a count for a declaratory judgment determining total damages because under *Bottini*, the "determination of damages by the jury that exceeded the policy limits might not be determinative of that issue if a subsequent bad faith case were brought separately." 21 Fla. L. Weekly Supp. 419, 420 (Fla. 13th Cir. Ct. Dec. 3, 2013). In its written order, the court reasoned that granting the motion and allowing the bad faith case to be joined was a "simple expedient" that would "ensure that the jury's determination . . . will [be] binding on both parties." Id. The court went on to stay all issues "other than those related to Count I and the total damages" and thereby protected the defendant from any prejudice that would have otherwise been caused by simultaneously litigating the unripe claims handling issues. Id.

The only way to ensure judicial efficiency is to allow both the claim for UM benefits and the claim for statutory bad faith to be brought in the same complaint and the bad faith issues abated or stayed.

**3. The claims for UM benefits and for bad faith should be litigated together in the same action to mitigate the risk of two courts entering inconsistent verdicts.**

Defendant's Motion should be denied to insure against the entry of inconsistent verdicts on liability and damages in the UM benefits and bad faith cases. A claim for bad faith under Section 627.727(10) requires a determination of the total amount of the plaintiff's damages. Therefore, several overlapping facts must be established in both an action for UM benefits and an action for statutory bad faith, including: (a) the determination of who was at fault in causing the collision; (b) whether the plaintiff was comparatively negligent, and if so, to what degree that negligence caused damages; (c) whether there was negligence by a third party, and if so to what degree that negligence caused damages; (d) the plaintiff's alleged damages including past and future lost wages, past and future medical expenses, non-economic damages based upon the permanency of the injuries; (e) whether the gross or net medical bill amount is admissible into evidence at trial; (f) offsets for collateral sources, and the applicability of offset cases from liability settings to claims based on UM coverage; and (g) an undeterminable but significant number of evidentiary and procedural issues, of the type that are presented in nearly every significant claim for UM damages.

Where the facts that must be proven are the same for two separate claims, holding separate trials on the same issues creates a risk of inconsistent findings that cannot be remedied on appeal. *Kavouras v. Mario City Restaurant Corp.*, 88 So. 3d 213, 214-15 (Fla. 3d DCA 2011); *Hickey v. Pompano K of C, Inc.*, 647 So. 2d 270, 271 (Fla. 4th DCA 1994). *Kavouras* involved the alleged

mishandling of funds, and the complaint sought both equitable relief and money damages. 88 So. 3d at 214. Both the claim for damages and the claims for equitable relief in the forms of a constructive trust and an accounting required a jury determination of whether the corporate funds at issue were misdirected; therefore, an order requiring separate trials for the separate forms of relief was inappropriate because it created a risk of inconsistent findings. Id. Similarly, the court in *Hickey* held that the need for a jury to apportion damages between more than one allegedly negligent party required that separate claims of relief be tried together to avoid the risk of inconsistent verdicts. 647 So. 2d at 271 (citing *Lawrence v. Hethcox,* 283 So. 2d 41, 43 (Fla. 1973)).

If this court grant's Defendant's Motion, Plaintiff will be forced to file his claim for statutory bad faith as a separate action. Even if a jury verdict is reached on the issues of liability and damages, the second trial court may decide to follow the court in *King* and refuse to give collateral estoppel effect to the first verdict. If the second trial court requires a re-litigation of liability and damages, both juries will be making determinations about many of the same facts, including whether or not MARK GIANASSI was comparatively negligent, how fault should be apportioned if so, and the extent of the damages suffered by the plaintiff. The risk for inconsistent verdicts, like the risk in *Kavouras* and *Hickey*, would be extremely high.

To avoid the potential for inconsistent verdicts, this court should deny Defendant's motion and allow litigation on all theories for relief to proceed in the same action.

**Plaintiff opposes STATE FARM's Motion to Dismiss the Bad Faith Cause of Action (Count II), but has no objection to this Court appropriating abating Count II pending resolution of Count I**, staying all discovery an other proceedings relating to the issues of claims handing and related topics that would be relevant only to the statutory violations count. *State*

*Farm Mut. Ins. Co. V. O'Hearn*, 975 So. 2d 633, 635-36 (Fla. 2d DCA 2008) (holding any potential prejudice that would be caused by contemporaneous discovery of both the liability and damages issues and the claims handling issues can be appropriately remedied by staying the claims handling issues for discovery and trial). See also *State Farm Florida Ins. Co. v. Seville Place Condo Assoc., Inc.* 74 So.3d 105 (Fla. 4th DCA 2011) ("a trial court order denying a motion to dismiss an allegedly-premature bad faith claim would not, without more, satisfy the "irreparable harm' requirement for certiorari . . . ")

**COUNT III STATES A VIABLE CAUSE OF ACTION, A CLAIM FOR DECLARATORY RELIEF, AND SHOULD NOT BE DISMISSED**

STATE FARM argues that Count III is "redundant" (DOC. No. 12 at p. 10) and this court "lacks jurisdiction" (DOC. No. 12 at p. 13). However, Defendant's motion to dismiss Count III misses the point of the claim for declaratory relief. Because insecurity and uncertainty with respect to Plaintiff's damages exist, it is proper for this Court to enter a declaratory judgment, consisting of the Jury's total verdict for damages, rather than reducing the verdict to the policy limits as would be the case if the UM/UIM breach of contract claim in Count I is the only action being prosecuted. The purpose of Florida's Declaratory Judgment Statute is "to settle and afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations . . . to be liberally administered and construed." Fla.Stat. Section 86.011.

The Florida Supreme Court has specifically concluded that the declaratory judgment statutes authorize declaratory judgment actions to decide issues of fact as to an insurer's responsibilities. *Higgins v. State Farm Fire & Cas. Co.,* 894 So. 2d 5, 9 (Fla. 2004). Additionally, in Florida, an insured's ability to bring a first-party bad faith claim against an

insurer is a statutory right. *Allstate Ins. Co. v. Clohessy*, 32 F. Supp. 2d. 1328 at 1331 (M.D. Fla. 1998). Therefore, a declaratory judgment which settles both of those issues of fact would be appropriate in the present action because recovery under the bad faith statute requires both a determination of liability and the calculation of total damages.

Furthermore, Plaintiff's right to seek bad faith damages either presently exists or will arise in the future. The payment of policy limits by the insurer is the functional equivalent of a determination in favor of the insured for the purpose of showing that the insured has a valid claim. *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1273-74 (Fla. 2000); *Brookins v. Goodson*, 640 So. 2d 110 at 112 (Fla. 4th DCA 1994). *Vest* stands for the principle that an insurer cannot avoid a claim for bad faith, simply by paying policy limits and rendering the underlying UM claim moot. *See Vest,* 753 So. 2d at 1275 (holding that an action for bad faith accrues upon the payment of the policy limit, even if there has not been a determination of total damages). The purpose of requiring a resolution of the underlying UM claim is simply to show that the insured's claim for bad faith is a valid one. *Brookins*, 640 So. 2d at 112.

Attached hereto as **Exhibit "3"** is an Order from the Honorable Brian J. Davis of the Fourth Judicial Circuit Court for Nassau County, Florida, allowing a Complaint to be amended to add a similar declaratory judgment action by stating the following:

> In order to afford the Jury's verdict the final and conclusive effect it is intended to be, due process requires the Litigants to have the right to appeal the total amount of the verdict. Because the allegations of Plaintiff's current Complaint [only containing a UM/UIM breach of contract action] does not allow for the entry of judgment for the total amount of Plaintiff's damages, the Jury's damage award must be established by a declaratory judgment, which will be final and appealable...
>
> This Court agrees with Plaintiff's in that there is a bona fide, practical

> need for declaratory judgment here, with the emphasis on practical. By granting Plaintiff's leave to amend to add a declaratory judgment count to Plaintiff's Second Amended Complaint, this Court may, upon the appropriate verdict, enter judgment against Progressive for the amount of Plaintiff's damages. Providing for both Parties' due process rights with a vehicle to appeal the determination of damages, saves time and resources and aligns with the notions of justice.

Plaintiff seeks a declaratory judgment cause of action in an effort to preserve judicial resources and provide due process rights to all parties to this litigation and to avoid piecemeal, costly, and duplicative, and potentially inconsistent, trial on damages.

The Florida Supreme Court indicated that an excess verdict in an underlying UM/UIM contract action should be considered as part of the calculations of total damages in a subsequent bad faith action, opining:

> Section 627.727(10) provides that the damages recoverable from an uninsured motorist insurance carrier in a bad faith action brought under section 624.155 and the 1990 amendment thereto shall include the total amount of a claimant's damages, including any amount in excess of the claimants's policy limits awarded by judge or jury in the underlying claim. *State Farm Mutual Insurance Co. v. Laforet*, 658 So.2d 55, 56-57 (Fla. 1995)

Historically, an excess verdict in an action for UM/UIM contract benefits has been used to determine the "total damages" in an action for statutory insurance bad faith pursuant to Section 624.155, Florida Statutes. Very recently, this method has been called into question. The issuance of *Government Employees Insurance Co. v. Bottini*, 93 So. 3d 476 (Fla. 2d DCA 2012), has prompted some courts to require claimants to re-litigate damages in the bad faith case *if the claim for bad faith is brought separately from the claim to determine UM/UIM benefits.* The application of *Bottini*, and the trend by insurance carriers to argue that the UM/UIM verdict is not a sufficient determination of the total damages suffered, has prompted insureds, such as Plaintiff, to add a first-

party statutory bad faith count and a declaratory judgment count to the UM/UIM contract action to avoid the possibility of two separate trials on damages. More importantly, Plaintiff's three-count Complaint does not prejudice Defendant STATE FARM.

In the context of UM/UIM claims, the damages recoverable in an action for first-party bad faith are defined by statute and include:

> .... the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third- party tortfeasor.

§ 627.727(10), Fla.Stat. Although Section 627.727(10) makes the UM/UIM insurer liable for the "total amount of the claimant's damages, including the amount in excess of the policy limits," the statute does not explain exactly how damages are to be determined or whether the excess verdict in the underlying UM/UIM contract action would act as a final determination of damages. *King* v . *Gov't Empls. Ins. Co.,* 2012 WL 4052271, Case No. 8:1O-cv-977-T-30AEP, at 5 (M.D. Fla. Sept. 13,2012) (citing *Bottini,* 93 So. 2d at 478).

*Bottini* and *King* have created an element of procedural confusion and brought into question whether an excess verdict is conclusive evidence of the total damages suffered by the UM/UIM claimant in a statutory insurance bad faith case. *See King,* 2012 WL 4052271 at 5-6.

In *Bottini,* GEICO appealed a judgment in favor of its insured in a UM case. 93 So. 3d at 477. The jury awarded the plaintiff, GEICO's insured, over $30 million, but the judgment amount entered was limited to the UM policy limits of fifty thousand dollars ($50,000). *Id.* The Second District affirmed the judgment and found any error to be harmless. *Id.* Although

the majority affirmed with minimal discussion, Judge Altenbemd wrote a concurrence explaining that "at least one judge on this panel has not decided that the verdict is correct or incorrect as to damages awarded in excess of [the policy limit] because that issue is not within our permissible scope of review." *Id.* at 478 (Altenbemd, J., concurring).

Judge Altenbemd laid the groundwork for courts to determine that the amount of the underlying jury verdict in excess of the UM/UIM policy limits had no collateral estoppel effect in a subsequent and separately filed first-party bad faith action. Relitigation of an issue is only precluded under collateral estoppels principles if a final judgment has been entered on that issue. *Stogniew* v. *McQueen,* 656 So. 2d 917, 919 (Fla. 1995). If the *Bottini* concurrence is correct in its contention that the jury's determination of excess damages is non-essential to the judgment, then the verdict cannot have collateral estoppels effect in a subsequent action for bad faith. *See Dep't of Health* & *Rehab. Services* v. *B.J.M,* 656 So. 2d 906 (Fla. 1995). This creates a procedural gap in the law. If a claimant cannot use the underlying excess verdict from the UM/UIM contract action in any subsequent bad faith action as conclusive evidence of the total damages suffered, the total amount of the claimant's damages would need to be determined a second time by a second jury during the bad faith trial.

**<u>BOTH COUNT II AND COUNT III ARE NECESSARY</u>**

It is not unheard of for the insurer to pay the UM policy limit and settle a UM claim after years of litigation and then seek to dismiss the count for bad faith in cases where the UM benefits claim and bad faith claim were initially brought together. *See Liberty Mutual's Motion to Dismiss, Ludwig* v. *Liberty Mutual Fire Ins. Co.,* Fla. 12th Cir., Case No. 09-CA-001596, dated Nov. 13,2012, attached hereto as **Exhibit "4".**

The only way to ensure judicial efficiency is to allow both the claim for UM/UIM benefits and the claim for statutory bad faith to be brought in the same complaint, abate the bad faith issues, and permit a declaratory judgment action to proceed with the UM/UIM contract action.

The declaratory judgment would allow Plaintiff to save the court's precious time and resources by continuing litigation towards a final judgment, thereby erasing the need for a second round of discovery and litigation on the damages issue. In addition to there being a bona fide, actual, present, and practical need for a declaratory judgment, the judgment sought deals with a presently ascertainable set of facts because STATE FARM's liability and the amount of total damages are presently ascertainable. Plaintiff meets all of the requirements for obtaining the declaratory relief sought in the Complaint, and, more importantly, as discussed herein, the declaratory relief is not futile.

The practical outcome of denying Defendant STATE FARM's Motion to Dismiss Counts II and III is that the parties and the court would be able to avoid the need to start the discovery process over from the beginning on the issue of damages after the claim for UM benefits in Count I is concluded. Any subsequent tender of the UM/ UIM policy limit by STATE FARM would render Plaintiff's claim for UM/ UIM benefits moot and automatically ripen Plaintiffs claim for bad faith, but a determination of the full extent of damages will still be necessary. *See King,* 2012 WL 4052271 at 6. By allowing a declaratory judgment on liability and damages, Plaintiff seeks to avoid the need to start discovery on this issue all over again upon the ripening of the abated bad faith claim. A declaratory judgment count allows litigation in the present case to continue without interruption towards a final judgment even if

the parties resolve Plaintiff s claim for UM / UIM benefits.

Because a declaratory judgment would be a final judgment, it would also have collateral estoppel effect in the subsequent bad faith claim. The declaratory judgment sought by Plaintiff is not premature, is allowed under the declaratory judgment statute, and is necessary to ensure that the time and resources expended by the parties and to be expended in the future do not go to waste. Consequently, the count for declaratory judgment on liability and total damages is not futile. Together, Plaintiffs three-count Complaint will ensure that all claims for UIM benefits and extra-contractual bad faith claims are prosecuted in the most judicially efficient manner since as discussed above the collateral estoppel effect of an excess verdict in an underlying UMIUIM action has been called into question by various Florida courts.

WHEREFORE, Plaintiff, MARK GIANASSI, respectfully requests that this Honorable Court enter an Order denying Defendant STATE FARM's Motion to Dismiss Plaintiff-Gianassi's Counts for Bad Faith and For Declaratory Judgment and abating Count II pursuant to current Florida case law, together with any other relief this Court deems appropriate Respectfully submitted this 15th day of August 2014.

THE MAHER LAW FIRM
631 W. Morse Blvd., Suite 200
Winter Park, FL 32789
Phone: (407) 839-0866
Fax: (407) 425-7958
Attorneys for Plaintiff

*/s/ Senthia T. Santana*

SENTHIA T. SANTANA, ESQ.
Florida Bar # 0017109
sdtowery@maherlawfirm.com
jmelendez@maherlawfirm.com
sspleadings@maherlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy hereof has been furnished to **Kevin Knight, Esq. and Jason Breslin, Esq.**, deBeaubien, Knight, Simmons, Mantzaris & Neal, LLP, Attorneys for State Farm, 332 N. Magnolia Avenue, Orlando, FL 32801 by electronic mail to TKK11@dbksmn.com, elamb@dbksmn.com, kflaherty@dbksmn.com, and mqm44@dbksmn.com and by facsimile (407) 422-0970 this 15th day of August, 2014.

**THE MAHER LAW FIRM**
A Professional Association
631 W. Morse Blvd., Suite 200
Winter Park, FL 32789
Phone: 407-839-0866
Fax: 407-425-7958
Attorneys for Plaintiff

*/s/ Senthia T. Santana*

SENTHIA T. SANTANA, ESQ.
Florida Bar # 0017109
sdtowery@maherlawfirm.com
jmelendez@maherlawfirm.com
sspleadings@maherlawfirm.com